# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| QUANITA MONROE,<br><br>     PLAINTIFF,<br><br>against<br><br>MEDTRONIC, INC., COVIDIEN U.S. HOLDINGS, INC., COVIDIEN LP, AND DOES 1-100,<br><br>     DEFENDANTS. | CASE NO.: 1:20-CV-10144 |

**MEMORANDUM IN SUPPORT OF DEFENDANTS COVIDIEN U.S. HOLDINGS, INC., COVIDIEN LP, AND MEDTRONIC, INC.'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

i

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...........................................................................................................1

BACKGROUND .............................................................................................................2

    I.     Plaintiff's Allegations ...........................................................................2

    II.    Hernia Surgery and Hernia Mesh. ........................................................3

LEGAL STANDARD .....................................................................................................5

ARGUMENT ..................................................................................................................5

    I.     Nebraska Law Applies to Plaintiff's Claims .......................................5

    II.    Plaintiff Fails to State a Claim for Strict Liability ...............................6

          **A.**    Design Defect .............................................................................6

          **B.**    Manufacturing Defect.................................................................8

          **C.**    Failure to Warn .........................................................................9

    III.   Plaintiff Fails to State a Claim for Negligence ..................................12

    IV.   Plaintiff Fails to State a Claim for Negligence Per Se .......................12

    V.    Plaintiff's Misrepresentation Claims Fail to Satisfy the Particularity Requirements of Rules 9(b) and 12(b)(6) ...............................................................13

    VI.   Plaintiff Fails to State a Consumer Fraud Claim ...............................15

    VII.  Plaintiff Fails to State a Claim for Vicarious Liability ......................16

    VIII. Plaintiff Fails to State a Claim for Unjust Enrichment ......................16

    IX.   Plaintiff Cannot Maintain Her Punitive Damages Claim. ..................17

CONCLUSION..............................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackles v. Luttrell*,
561 N.W.2d 573 (Neb. 1997) .............................................................................................. 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................................... 5, 13

*Barnes v. Medtronic, PLC*,
Case No. 2:17—cv14194—SJM—RSW, 2019 WL 1353880 (E.D. Mich. Mar.
26, 2019) .............................................................................................................................. 2

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 570 (2007) ................................................................................................... 5

*Bergin v. Dartmouth Pharm. Inc*.,
326 F. Supp. 2d 179 (D. Mass. 2004) ................................................................................ 5

*Cofresi v. Medtronic, Inc*.,
No. 5:19-CV-1222-DAE, 2020 WL 1887862 (W.D. Tex. Mar. 30, 2020) ................... 2, 9, 11

*Cyclonaire Holding Corp. v. Baker*,
No. 4:16CV467, 2017 WL 3206894 (D. Neb. Apr. 11, 2017) ....................................... 14, 15

*Dickey v. Meier's Estate*,
197 N.W.2d 385 (Neb. 1972) .............................................................................................. 17

*Dunham, C. v. Covidien, LP*.,
No. 1:19-cv-02855-JGK, ECF No. 21 (S.D.N.Y. Nov. 4, 2019) .......................................... 2

*Dunham, K. v. Covidien LP*,
No. 19 Civ. 2851 (LLS), 2019 WL 2461806, (S.D.N.Y. May 22, 2019) ................... 2, 8, 9, 11

*Dye v. Covidien LP*,
No. 18-cv-61485-RAR, ECF No. 36 (S.D. Fla. July 2, 2019) ............................................. 2

*In re Ethicon Physiomesh*,
No. 1:17-md-02782 (N.D. Ga.), D.I. 239 ............................................................................ 4

*Farm Credit Servs. of Am. v. Haun*,
734 F.3d 800 (8th Cir. 2013) .............................................................................................. 14

*Freeman v. Hoffman-La Roche, Inc.*,
618 N.W.2d 827, 840 (Neb. 2000) .......................................................................... 8, 9, 11, 12

*Green v. Covidien,*
   LP, No. 18 Civ. 2939 (PGG), 2019 WL 4142480 (S.D.N.Y. Aug. 30, 2019).........................2

*Gustavsen v. Alcon Labs., Inc.,*
   272 F. Supp. 3d 241 (D. Mass. 2017), *aff'd*, 903 F.3d 1 (1st Cir. 2018) ................................3

*Kelly v. Covidien, Inc.,*
   No. 1:19-cv-05497-GBD (S.D.N.Y. Jan. 7, 2020).................................................................2

*Kennedy v. Covidien, LP,*
   No. 1:18—cv-01907-LTS-KNF, 2019 WL 1429979 (S.D.N.Y. Mar. 29, 2019) ...................2

*Krulewich v. Covidien L.P.,*
   No. 1:19-cv-02857-JGK, ECF. No. 16 (S.D.N.Y. Nov. 4, 2019)...........................................2

*Longtin v. Organon USA, Inc.,*
   363 F.Supp. 3d 186 (D. Mass. 2018).....................................................................................6

*Marmo v. Tyson Fresh Meats, Inc.,*
   457 F.3d 748 (8th Cir. 2006) ..............................................................................................17

*Meredith v. Medtronic., et al.,*
   No. 3:18-cv-00127-RGE-HCA, ECF No. 56 (S.D. Iowa Oct. 25, 2019)...............................2

*Monroe v. Medtronic, Inc. et al.,*
   No. 1:19-cv-01992-CFC, ECF No. 5 (D. Del. Nov. 27, 2019)...............................................1

*Monroe v. Medtronic, Inc., et al.,*
   No. 1:20-cv-10144, ECF No. 1 (D. Mass. Jan. 23, 2020) ......................................................1

*Nielsen v. Thermo Mfg. Sys., LLC,*
   No. 8:17CV471, 2018 WL 1383182 (D. Neb. Mar. 19, 2018)..............................................14

*Nowell v. Medtronic, Inc.,*
   372 F. Supp. 3d 1166 (D. N.M. 2019)....................................................................................2

*O'Brien v. Cessna Aircraft Co.,*
   903 N.W.2d 432 (Neb. 2017)................................................................................................18

*Oriental Trading Co., Inc. v. Yagoozon, Inc.,*
   No. 8:13CV351, 2016 WL 2859603 (D. Neb. May 16, 2016) .............................................15

*Pellegrin v. C.R. Bard,*
   Civ. A. No. 17-12473, 2018 WL 3046570 (E.D. La. June 20, 2018) .....................................2

*Reicher v. Berkshire Life Ins. Co. of America,*
   360 F.3d 1 (1st Cir. 2004)......................................................................................................5

*Rincon v. Covidien*,
    No. 16—CV-10033 (JMF), 2017 WL 2242969 (S.D.N.Y. May 22, 2017) .................. 2, 8, 12

*Sanford v. Ektelon/Prince Sports Grp., Inc.*,
    No. 8:97CV368, 1999 WL 33537914 (D. Neb. Nov. 5, 1999) ............................................... 16

*Shelton v. Young's Welding & Mach. Shop*,
    No. 8:14CV165, 2015 WL 247834 (D. Neb. Jan. 20, 2015) .................................................. 12

*Soutner v. Covidien, LP*,
    No. 1:17-cv-02178- YK, 2019 WL 3801438 (M.D. Pa. Aug. 13, 2019) ................................. 2

*Stahlecker v. Ford Motor Co.*,
    266 Neb. 601, 667 N.W.2d 244 (Neb. 2003) .................................................................... 8, 11

*Taylor v. Medtronic, Inc.*,
    No. 3:18-CV-1201-FJS/ML, 2020 WL 886118 (N.D.N.Y. Feb. 24, 2020) .................. 2, 9, 11

*Tyler v. Bristol-Meyer Squibb*,
    No. 8:10CV107, 2010 WL 1664967 (D. Neb. Apr. 23, 2010) ............................................... 11

*Vallejo v. Amgen, Inc.*,
    No. 8:14CV50, 2014 WL 4922901 (D. Neb. Sept. 29, 2014) ................................................. 7

*Wolfson Car Leasing Co. v. Weberg*,
    264 N.W.2d 178 (Neb. 1978) ............................................................................................... 17

## Statutes

15 U.S.C. § 2301 et seq. ........................................................................................................... 16

21 U.S.C. § 331(e) .................................................................................................................... 13

21 C.F.R. § 806.0l(a)(l) ........................................................................................................... 13

Neb. Rev. Stat. § 59-1602 ........................................................................................................ 15

## Other Authorities

FDA, *510(k) Premarket Notification, Summary of Safety and Effectiveness*,
    Parietex Composite Mesh,
    https://www.accessdata.fda.gov/cdrh_docs/pdf4/k040998.pdf ................................................. 4

FDA, *Class I Device Recall Davol Composix Kugel Hernia Patch*,
    https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfRES/res.cfm?id=49722 ...................... 4

FDA, *Hernia Surgical Mesh Implants*, https://www.fda.gov/medical-
    devices/implants-and-prosthetics/hernia-surgical-mesh-implants (last updated
    Feb. 4, 2018) ................................................................................................................... 3, 4, 7

Fed. R. Civ. Proc. 9(b) ................................................................................................ 1, 14

Fed. R. Civ. Proc. 12(b)(6) ......................................................................................... 1, 14

Local Rule 7.1(a)(2) ........................................................................................................ 1

Neb. Const. art. VII, § 5 ............................................................................................... 18

Defendants Covidien U.S. Holdings, Inc., Covidien LP, and Medtronic, Inc. (collectively "Defendants") respectfully submit this Memorandum in Support of their Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).[1]  For the reasons discussed below, Plaintiff's SAC does not allege sufficient facts to support any of her claims and should be dismissed in its entirety and with prejudice.

## **INTRODUCTION**

Even now on her third pleading attempt,[2] Plaintiff Quanita Monroe, a resident of Omaha, Nebraska, has not adequately pled any of her 11 product liability claims related to the use of Defendants' Parietex Composite ("PCO") mesh in her 2013 ventral hernia repair.

Underlying all of Plaintiff's claims are allegations that Defendants' mesh somehow was defectively designed and that its labeling failed to warn of some of the risks associated with its use.  But the SAC—like Plaintiff's two prior complaints—does not include any specific allegations or explanations as to the nature of: (1) any defect in the hernia mesh's manufacture,

---

[1]  Defendants do not concede that Covidien U.S. Holdings, Inc. or Medtronic Inc. are appropriate parties to this lawsuit.

[2] Plaintiff initially filed a complaint against Defendants on October 17, 2019, in the Superior Court for the State of Delaware, New Castle County.  On October 21, 2019, Defendants removed the case to the U.S. District Court for the District of Delaware on diversity of citizenship grounds.  On November 27, 2019, Defendants moved to dismiss Plaintiff's complaint.  *See* Motion to Dismiss, *Monroe v. Medtronic, Inc., et al.*, No. 1:19-cv-01992-CFC (D. Del. Nov. 27, 2019), ECF Nos. 4 and 5.  On January 23, 2020, Plaintiff voluntarily dismissed her complaint in Delaware and filed a complaint against Defendants in this Court that same day.  *See* Complaint, *Monroe v. Medtronic, Inc., et al.*, No. 1:20-cv-10144 (D. Mass. Jan. 23, 2020), ECF No. 1. Pursuant to Local Rule 7.1(a)(2), counsel for Plaintiff and Defendants conferred regarding deficiencies in the complaint, leading to Plaintiff filing a First Amended Complaint on February 14, 2020, and a Second Amended Complaint on April 30, 2020.  *See id.*, ECF Nos. 4 and 9, respectively.

design, or warnings, or (2) the causal relationship between any alleged mesh defects and

Plaintiff's injuries.

Numerous federal courts have dismissed similarly deficient hernia mesh complaints

alleging injuries related to the use of the Defendants' hernia mesh products in their entirety.[3]

The same outcome is appropriate here.

## **BACKGROUND**

### I.     **Plaintiff's Allegations**

Plaintiff alleges that she began to experience severe complications, including "persistent

and extreme abdominal pain," after Defendants' PCO mesh was implanted as part of Plaintiff's

May 7, 2013 ventral hernia repair surgery.  SAC ¶¶ 33–34.  On an unknown date, Plaintiff

"underwent corrective surgery to remove or revise part of the hernia mesh device."  *Id.* at ¶ 34.

Almost four years later, on or about January 23, 2017, Plaintiff claims she was taken to the

emergency room for abdominal pain, and exploratory surgery allegedly revealed that the PCO

---

[3] *See, e.g.*, *Cofresi v. Medtronic, Inc.*, No. 5:19-CV-1222-DAE, 2020 WL 1887862 (W.D. Tex. Mar. 30, 2020); *Taylor v. Medtronic, Inc.*, No. 3:18-CV-1201-FJS/ML, 2020 WL 886118 (N.D.N.Y. Feb. 24, 2020); Order, *Kelly v. Covidien, Inc.,* No. 1:19-cv-05497-GBD, ECF No. 16 (S.D.N.Y. Jan. 7, 2020); Order, *Dunham, C. v. Covidien, LP.*, No. 1:19-cv-02855-JGK, ECF No. 21 (S.D.N.Y. Nov. 4, 2019); Order, *Krulewich v. Covidien L.P.*, No. 1:19-cv-02857-JGK, ECF No. 16 (S.D.N.Y. Nov. 4, 2019); Order, *Meredith v. Medtronic, et al.*, No. 3:18-cv-00127-RGE-HCA, ECF No. 56 (S.D. Iowa Oct. 25, 2019); *Green v. Covidien*, LP, No. 18 Civ. 2939 (PGG), 2019 WL 4142480 (S.D.N.Y. Aug. 30, 2019); *Soutner v. Covidien, LP*, No. 1:17-cv-02178- YK, 2019 WL 3801438 (M.D. Pa. Aug. 13, 2019); Order, *Dye v. Covidien LP*, No. 18-cv-61485-RAR, ECF No. 36 (S.D. Fla. July 2, 2019);  *Kennedy v. Covidien, LP*, No. 1:18-cv-01907-LTS-KNF, 2019 WL 1429979 (S.D.N.Y. Mar. 29, 2019); *Nowell v. Medtronic, Inc.*, 372 F. Supp. 3d 1166 (D.N.M. 2019); *Barnes v. Medtronic, PLC*, Case No. 2:17-cv-14194-SJM-RSW, 2019 WL 1353880 (E.D. Mich. Mar. 26, 2019); *Pellegrin v. C.R. Bard*, Civ. A. No. 17-12473, 2018 WL 3046570 (E.D. La. June 20, 2018); *Rincon v. Covidien*, No. 16-CV-10033 (JMF), 2017 WL 2242969 (S.D.N.Y. May 22, 2017).

mesh "had eroded into plaintiff's small intestine, requiring immediate removal of both the

Parietex Composite Mesh and a portion of plaintiff's bowel." *Id*. at ¶¶ 35–36.

## II.     Hernia Surgery and Hernia Mesh.

A hernia occurs when an organ or fatty tissue squeezes through a hole or a weak spot in

the surrounding muscle or connective tissue, most often in the abdomen.  Hernias affect more

than four million people in the United States annually.  Risk factors for hernias include obesity,

pregnancy, prior surgeries, and family history.[4]

Surgery is the only treatment available to repair a hernia.  Like all surgical procedures,

hernia repair has inherent risks, regardless of whether mesh is used.  According to the U.S. Food

& Drug Administration ("FDA"), these risks include "pain, infection, hernia recurrence, scar-like

tissue that sticks tissues together (adhesion), blockage of the large or small intestine

(obstruction), bleeding, abnormal connection between organs, vessels, or intestines (fistula),

fluid build-up at the surgical site (seroma), and a hole in neighboring tissues or organs

(perforation)."[5]  It is well-known that a significant percentage of all hernias will recur within a

few years after surgery.  This risk is lower when mesh is used, and higher in patients who are

obese or have large hernias.

---

[4] *See* FDA, *Hernia Surgical Mesh Implants*, https://www.fda.gov/medical-devices/implants-and-prosthetics/hernia-surgical-mesh-implants (last updated Feb. 4, 2018). To provide context to the Court, Defendants provide additional information here from FDA, information of which the Court can take judicial notice for purposes of this motion.  *See Gustavsen v. Alcon Labs., Inc.,* 272 F. Supp. 3d 241, 252 (D. Mass. 2017), *aff'd*, 903 F.3d 1 (1st Cir. 2018) ("Courts in the District of Massachusetts have considered information on the FDA's website subject to judicial notice and consideration on a motion to dismiss."). Defendants request the Court take judicial notice of this information because FDA's public website is a database maintained by FDA and reflects final agency action.

[5] *See* FDA, *Hernia Surgical Mesh Implants, supra note* 4.

Beginning in the mid-1940s, hernia mesh products were introduced in the United States and quickly revolutionized hernia surgery. Clinical studies suggest that surgical mesh improves patient outcomes and reduces recovery times.[6] For these reasons, most surgeons now use mesh to repair all but the smallest hernias.

Surgical mesh is safely used in hundreds of thousands of hernia repair procedures each year. Over the past decade, a few isolated hernia mesh products— most notably Davol's Composix Kugel Mesh and Ethicon's Physiomesh Flexible Composite Mesh—have been recalled or voluntarily withdrawn due to product design and performance issues.[7] Those regulatory actions led to significant litigation, including the Kugel Mesh MDL in the District of Rhode Island and the Physiomesh MDL in the Northern District of Georgia. Although the Kugel and Physiomesh recalls and withdrawals were product-specific and involved unique design features, litigation involving unrelated hernia mesh products—which have not been subject to adverse regulatory action—has followed.

Defendant Covidien manufactures several different hernia meshes, each intended to facilitate the repair of specific types of hernias. The product at issue here is PCO mesh.[8] PCO is a polyester surgical mesh, which differs significantly in design and materials from the polypropylene Kugel and Physiomesh products. PCO mesh never has been subject to recalls or other adverse regulatory actions.

---

[6] *See id.*

[7] *See* FDA, *Class I Device Recall Davol Composix Kugel Hernia Patch*, https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfRES/res.cfm?id=49722 (last updated May 8, 2020); *see also* Compl., *In re Ethicon Physiomesh*, No. 1:17-md-02782, ECF No. 239 (N.D. Ga.).

[8] *See* FDA, *510(k) Summary for Parietex Composite Mesh*, https://www.accessdata.fda.gov/cdrh_docs/pdf4/k040998.pdf

**LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). Additionally, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555. This "plausibility standard" requires "more than an unadorned, the–defendant–unlawfully–harmed–me accusation." *Iqbal*, 556 U.S. at 678.  Where a complaint contains facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility." *Id*. (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

**ARGUMENT**

**I.      Nebraska Law Applies to Plaintiff's Claims**

In federal court, "[t]he question of which state's law applies is resolved using the choice of law analysis of the forum state." *Reicher v. Berkshire Life Ins. Co. of Am.*, 360 F.3d 1, 4 (1st Cir. 2004).  Under Massachusetts law, "tort claims are governed by the law of the state where the alleged injury occurred, unless another state has a more significant relationship to the cause of action." *Bergin v. Dartmouth Pharm. Inc*., 326 F. Supp. 2d 179, 183 (D. Mass. 2004) (citing *Dunfey v. Roger Williams Univ*., 824 F. Supp. 18, 21 (D. Mass. 1993)).  To determine which state has the most significant interest, Massachusetts courts apply "a functional choice of law approach that responds to the interests of the parties, the States involved, and the interstate system as a whole." *Reicher*, 360 F.3d at 4-5 (1st Cir. 2004) (citing Restatement (Second) Conflict of Laws § 6 (1971)).  Under this approach, factors to be considered in a tort case include: (1) where the injury occurred; (2) where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and

(4) where the relationship, if any, between the parties is centered.  *See Longtin v. Organon USA, Inc.,* 363 F. Supp. 3d 186, 191–192 (D. Mass. 2018).

Here, Nebraska has the most significant relationship to all of Plaintiff's claims.  Plaintiff resides in Nebraska; Nebraska is where her hernia mesh appears to have been implanted; any statements Defendants allegedly made to Plaintiff's implanting physician about the hernia mesh and the physician's reliance likely would have occurred in Nebraska; and Plaintiff's alleged injuries occurred in Nebraska.  SAC ¶ 8.  Massachusetts, on the other hand, has no connection to the case other than it is Defendant Covidien LP and Defendant Covidien Holdings, Inc.'s principal place of business.  Defendant Covidien LP and Defendant Covidien Holdings, Inc. are incorporated in Delaware, and Defendant Medtronic Inc. is incorporated in and has its principal place of business in Minnesota.

As Nebraska has the more significant relationship to Plaintiff's claims, the Court should find that Nebraska law governs the substantive claims addressed herein.

## II.       Plaintiff Fails to State a Claim for Strict Liability

### A.       Design Defect

To state a strict liability design defect claim under Nebraska law, Plaintiff must allege that:

> (1) the defendant placed the product on the market for use and knew, or in the exercise of reasonable care should have known, that the product would be used without inspection for defects; (2) the product was in a defective condition when it was placed on the market and left the defendant's possession; (3) the defect is the proximate or a proximately contributing cause of the plaintiff's injury sustained while the product was being used in a way and for the general purpose for which it was designed and intended; (4) the defect, if existent, rendered the product unreasonably dangerous and unsafe for its intended use; and (5) the plaintiff's damages were a direct and proximate result of the alleged defect.

*Vallejo v. Amgen, Inc.*, No. 8:14CV50, 2014 WL 4922901, at *7 (D. Neb. Sept. 29, 2014).  In connection with the fourth element, Plaintiff must satisfy a "consumer expectations test" by

alleging that the product was "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Id.* (citing *Freeman v. Hoffman-La Roche, Inc.*, 618 N.W.2d 827, 840 (Neb. 2000)).

Here, Plaintiff fails to state a design defect claim for two reasons. First, Plaintiff does not include any factual allegations to support her legal conclusion that Defendants' PCO mesh was "unreasonably dangerous" or "defectively designed." Plaintiff provides only the conclusory allegations that Defendants' mesh: (1) "was defectively designed when sold," SAC ¶ 60; (2) "was unreasonably dangerous, taking into consideration the utility of said product and the risks involved in their use," *id.* ¶ 61; and (3) "[t]he defective and unreasonably dangerous condition of the mesh product was the proximate cause of the damages and injuries to Plaintiff Quanita Monroe." *Id.* ¶ 63. The only PCO design feature that Plaintiff criticizes is the mesh's polyester material, which Plaintiff claims can "cause severe inflammation" and has "unsealed edges" which allegedly "would cause the mesh to fray and disintegrate" and could cause "organ perforation." *Id.* ¶¶ 69–70. But, the potential complications Plaintiff identifies—inflammation and perforation—are widely known risks of any hernia repair procedure, regardless of whether mesh is used, and are not even complications Plaintiff alleges experiencing.[9] Plaintiff thus fails to allege how or why PCO mesh is "unreasonably dangerous" beyond the expectations of consumers undergoing hernia repair surgery.

Second, Plaintiff does not explain how any purported defect in the PCO mesh caused her alleged injuries. Plaintiff alleges two injuries: (1) persistent pain, and (2) the mesh "erod[ing]

---

[9] *See* FDA, *Hernia Surgical Mesh Implants, supra* note 4.

7

into plaintiff's small intestine," from which a specific injury is not clear (i.e., adhesion or perforation). SAC ¶¶ 34–35. As discussed above, pain, adhesion, and perforation are well-known and common complications of hernia repair procedures. And, "[n]othing in the [Second] Amended Complaint even endeavors to explain why the mesh is a more likely, let alone proximate, cause of [Plaintiff's] alleged harms." *Rincon*, 2017 WL 2242969, at *1; *see also Dunham, K. v. Covidien LP*, No. 19 Civ. 2851 (LLS), 2019 WL 2461806, at *3 (S.D.N.Y. May 22, 2019) (denying a similarly threadbare hernia mesh design defect claim for failure to allege that the "defective design was a proximate cause of Plaintiff's injuries."); *Stahlecker v. Ford Motor Co.*, 667 N.W.2d 244, 257–58 (Neb. 2003) (denying design defect claim where the damages sought "were not caused by a defective product itself"). Because Plaintiff has not alleged sufficient facts to support any element of a design defect claim, the Court should dismiss this claim.

### B. Manufacturing Defect

Under Nebraska law, a plaintiff asserting a strict liability manufacturing defect claim must allege that the product differs from the manufacturer's "plan and specifications" for that product. *Freeman v. Hoffman-La Roche*, 618 N.W.2d, 827, 841 (Neb. 2000). A plaintiff also must allege that the defect proximately caused her injury. *See Stahlecker*, 667 N.W.2d at 257–58.

Here, Plaintiff alleges that the "Parietex Products were defectively manufactured when they were implanted in Plaintiff's body," and that Defendants' mesh product was "defective in composition, material, physical properties, pore size, mechanical properties, biomechanical properties, elasticity, and engineering." SAC ¶¶ 68–71. However, nowhere does Plaintiff identify any ways in which her mesh departed from its FDA-cleared design and performance specifications. Further, Plaintiff fails to allege any facts supporting a causal relationship between

a specific manufacturing defect and her alleged injuries.  Plaintiff merely asserts, in conclusory fashion, that "[a]s a direct and proximate result of Defendants' defective manufacturing of the Parietex Products, Plaintiff suffered injuries and damages . . . ."  SAC ¶ 72.  Several federal courts have found similar allegations about hernia mesh insufficient to maintain a manufacturing defect claim.  *See, e.g., Cofresi v. Medtronic, Inc.*, 2020 WL 1887862, at *4 (W.D. Tex. Mar. 30, 2020) ("[N]owhere in the FAC does Plaintiff allege that a particular mishap occurred in the manufacturing process that rendered the [hernia mesh] unreasonably dangerous . . . .'"); *Taylor v. Medtronic, Inc*., 2020 WL 886118, at *7 (N.D.N.Y. Feb. 24, 2020) ("These generic and conclusory statements do not show how Plaintiff's specific [hernia mesh] implant was flawed or deviated in quality and performance from other mesh implants produced during the manufacturing process."); *Dunham, K.,* 2019 WL 2461806, at *2 (denying defective manufacture claim where plaintiff experienced "known complications of hernia repair" and "the possibility of other causes has not been excluded").  Accordingly, the Court should dismiss Plaintiff's strict liability manufacturing defect claim.

### C.    Failure to Warn

Under Nebraska law, a plaintiff asserting a strict liability failure-to-warn claim must allege that (1) the warning was inadequate and (2) the failure to provide reasonable warnings caused Plaintiff's injury.  *Freeman*, 618 N.W.2d at 841.  Yet again Plaintiff fails to allege facts supporting either element.

First, Plaintiff does not adequately allege that the warnings provided in the Instructions for Use ("IFU") that accompany the PCO mesh were defective.  Plaintiff alleges that Defendants did not warn physicians that (1) "Parietex Composite Mesh's collagen barrier quickly disintegrates once implanted and then exposes bare polyester to any underlying organs," SAC ¶ 77; (2) "after implantation the unsealed edges of the Parietex Products can begin to unravel

9

causing polyester fibers to detach and travel to other parts of the body," *id.* ¶ 78; (3) "Parietex mesh shrinks and contracts to a significant degree after it is implanted," *id.* ¶ 79; and (4) the IFU "failed to adequately warn" of numerous risks including "the product's immunologic response, pain, encapsulation, rejection, migration, scarification, contraction, adhesion to internal structures or organs, erosion and migration through adjacent tissue and viscera, bowel obstruction, bowel resections, or hernia incarceration or strangulation." *Id.* ¶ 81.  But nowhere does Plaintiff allege (1) *which* specific warnings were inadequate, or (2) what warnings *should* have been given.  Plaintiff also includes a number of purported warning deficiencies for complications that she does not allege experiencing anywhere in the SAC, including mesh traveling to other parts of her body, shrinking, or contracting.  SAC ¶¶ 34–35.  Further, Plaintiff fails to identify the warnings or materials that Plaintiff's doctors received or reviewed related to Defendants' mesh product.  Plaintiff only briefly alludes to the PCO mesh IFU, which to the contrary does warn about the very complications Plaintiff allegedly suffered:  chronic pain and potential adhesion.  *See* Parietex Composite Mesh IFU (attached as Exhibit A) (listing "Chronic pain" and "adhesions" as possible complications associated with the use of PCO mesh).

Second, Plaintiff does not allege any facts demonstrating how a defect in the product warnings caused her injuries.  Plaintiff's allegations as to causation are wholly conclusory.  *See, e.g.,* SAC ¶ 84 (stating that Plaintiff and her physicians should have been warned of "defects and dangers of the Parietex Products," without any description of the materials actually reviewed by Plaintiff's physicians); *id.* ¶ 85 ("As a direct and proximate result of the inadequate and defective warnings and instructions, Plaintiff suffered injuries and damages as summarized in this Complaint.").  These allegations lack any factual support and are insufficient to state a claim for relief.  *See Stahlecker*, 667 N.W.2d at 254, 257–58 (dismissing claims where the plaintiff did not

10

allege facts showing that "the failure to warn of potential tire failure" proximately caused a motorist's death).

Plaintiff does not plausibly allege that her implanting physician would have altered her treatment had he or she received different warnings.[10]  Absent such factual allegations, Plaintiff's failure-to-warn claim is not plausible on its face.  *See Tyler v. Bristol-Meyer Squibb*, No. 8:10CV107, 2010 WL 1664967, at *2 (D. Neb. Apr. 23, 2010) (dismissing failure to warn claim where "plaintiff does not allege that he, or his health-care provider, were not provided with reasonable warnings about the side effects of [a pharmaceutical product].")  Other federal courts have dismissed conclusory failure-to-warn allegations against Defendants' mesh on these grounds.  *See, e.g., Cofresi,* 2020 WL 1887862, at *5 ("Plaintiff fails to identify how the warning was inadequate or insufficient."); *Taylor,* 2020 WL 886118, at *6 ("[O]ther than a conclusory statement that, had he known the dangers he would never have allowed the product to be used in his body, Plaintiff does not specifically identify how Defendants' failure to warn caused his injuries."); *Dunham, K.*, 2019 WL 2461806, at *3 ("[The complaint] does not particularize specific omissions or inadequacies supporting its allegations that [plaintiff's] physicians 'would not have elected to use' those products if they had been accompanied by adequate warnings . . . ."); *Rincon*, 2017 WL 2242969, at *2 ("[Plaintiff's] failure to allege the existence of a defect (in the product and in Medtronic's warnings about the product) . . . is fatal to the Amended Complaint's ability to survive a motion to dismiss.").  For all of these reasons, Plaintiff's failure to warn claim should be dismissed.

---

[10] Because Plaintiff alleges that she obtained the mesh through her surgeon, the learned intermediary doctrine applies.  *See Freeman,* 618 N.W.2d at 842.  Thus, any duty by Defendants to warn ran to Plaintiff's implanting surgeon, rather than to Plaintiff herself.

11

## III.    Plaintiff Fails to State a Claim for Negligence

To state a negligence claim under Nebraska law, a plaintiff must plead that the defendant had a duty of ordinary care, that the defendant breached that duty, and that the breach caused the plaintiff's injury. *Shelton v. Young's Welding & Mach. Shop*, No. 8:14CV165, 2015 WL 247834, at *3 (D. Neb. Jan. 20, 2015) (internal citation omitted).  Here, Plaintiff fails to plead adequately any purported breach and causation.

As discussed above, Plaintiff does not identify any defect in the design, manufacture, or warning of Defendants' PCO mesh, nor does she bridge the causation gap to the injuries she allegedly experienced.  She provides only the conclusory allegation that Defendants failed to uphold a "duty to use reasonable care in designing, testing, inspecting, manufacturing, packaging, labeling, marketing, distributing, and preparing written instructions and warnings for the Parietex Products . . . ."  SAC ¶ 47.  Regarding causation, she alleges with no specificity that "[a]s a direct and proximate result of Defendants' negligence . . . Plaintiff suffered injuries and damages as summarized in this Complaint."  *Id.* ¶ 57.  These are conclusory allegations that lack any factual support.  Plaintiff's negligence claim thus necessarily fails and should be dismissed.  *See Freeman*, 618 N.W.2d at 845 (dismissing negligence claim that failed to "assert any specific factual allegations of negligence and alleged only conclusions"); *Ackles v. Luttrell*, 561 N.W.2d 573, 579-80 (Neb. 1997) ("A bare allegation of proximate cause and damages without providing information as to what negligence occurred fails to set forth a negligence cause of action.").

## IV.    Plaintiff Fails to State a Claim for Negligence Per Se

Plaintiff asserts a negligence per se claim for violations of 21 U.S.C. § 331(e) of  the Federal Food, Drug, and Cosmetic Act ("FDCA") for "failure to establish or maintain certain records, or make certain reports, with respect to medical devices," and 21 C.F.R. § 806.0l(a)(l) for "[f]ailure to report in writing to FDA a correction, removal, and/or discontinuation of a

device conducted to reduce a risk to health posed by the device." SAC ¶¶ 161–173. However, Plaintiff does not provide a single factual allegation in support of these claims. For example, Plaintiff does not identify or describe any PCO-related "records" that Defendants purportedly failed to "establish" or "maintain" or any PCO-related "reports" that Defendants did not make. Nor does she allege any connection between any supposed record-keeping or report-making and her injuries. Similarly, Plaintiff asserts that Defendants "violated 21 C.F.R. § 806.0l (a)(l) by correcting, removing, and/or discontinuing multiple types of the Parietex Mesh without reporting such actions to the FDA," *id.* ¶ 170, but does not identify these "multiple types of Parietex Mesh" by product name, explain the circumstances under which they were corrected, removed, and/or discontinued, or explain *how* their alleged correction, removal, and/or discontinuation would have resulted in Plaintiff not being implanted with the PCO mesh at issue.

Plaintiff's allegations amount to no more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" which "do not suffice." *Iqbal*, 556 U.S. at 678. Accordingly, the Court should dismiss Plaintiff's negligence per se claim.

## V. Plaintiff's Misrepresentation Claims Fail to Satisfy the Particularity Requirements of Rules 9(b) and 12(b)(6)

Plaintiff's negligent misrepresentation and fraudulent concealment claims fail under Fed. Rule Civ. P. 9(b),[11] which requires Plaintiff to "state with particularity the circumstances constituting fraud." *Cyclonaire Holding Corp. v. Baker*, No. 4:16CV467, 2017 WL 3206894, at

---

[11] Under Nebraska law, negligent misrepresentation is a type of fraud claim for which "a party must state with particularity the circumstances constituting fraud" in accordance with Fed. R. Civ. P. 9(b). *Farm Credit Servs. of Am. v. Haun*, 734 F.3d 800, 805 (8th Cir. 2013). Claims for negligent misrepresentation and fraudulent concealment "both require that the plaintiff allege a particular representation was made by the defendant." *Nielsen v. Thermo Mfg. Sys., LLC*, No. 8:17CV471, 2018 WL 1383182, at *6 (D. Neb. Mar. 19, 2018) (denying plaintiff's claims under Rules 9(b) and 12(b)(6)).

*3 (D. Neb. Apr. 11, 2017).  Where a complaint alleges fraud, a plaintiff "must allege such

matters as the time, place, and contents of false representations, as well as the identity of the

person making the misrepresentation and what was obtained or given up thereby.  In other

words, the complaint must plead the who, what, where, when, and how of the alleged fraud."  *Id.*

(citing *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009)).  "Conclusory allegations

that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule."  *Id.*

All of Plaintiff's fraud-based allegations are vague and conclusory, lacking the who,

what, when, and where that Rule 9(b) requires.  Plaintiff broadly alleges that Defendants

affirmatively "made false claims in documents and marketing materials about the safety and

quality of the Parietex Products" to Plaintiff, her doctors, and the public while "fraudulently and

affirmatively conceal[ing] the defective nature of the Parietex Products from Plaintiff."  SAC ¶

115.  Plaintiff also alleges that "Defendants negligently misrepresented or concealed the Parietex

Products' high risk of unreasonable and dangerous adverse side effects" and represented to

Plaintiff and her physicians "that Parietex Products had no serious side effects different from

those of other similar products and/or procedures."  *Id.* ¶¶ 123–124.  But these allegations do not

suffice.  What "claims" did Defendants make and in what ways were those claims "false"?  In

what documents or materials were those "claims" included?  What documents or materials were

missing "adverse side effects," and what unique side effects were allegedly omitted?  To whom

were these documents or materials given and when?  Plaintiff does not say.  Such barebones,

conclusory allegations "are not sufficient to satisfy the rule [Fed. R. Civ. P. 9(b)]."  *Baker*, 2017

WL 3206894, at *3.

Because Plaintiff has failed to plead any facts establishing the who, what, where, when,

and how of the alleged fraud, or how any alleged concealment or misrepresentation of the PCO

mesh's risks caused her injury, the Court should dismiss Plaintiff's negligent misrepresentation and fraudulent concealment claims.

## VI.     Plaintiff Fails to State a Consumer Fraud Claim

Plaintiff asserts claims under the Nebraska Consumer Protection Act, which "makes 'unfair methods of competition and unfair deceptive acts or practices in the conduct of any trade or commerce' unlawful" and requires a plaintiff to allege that a defendant (1) "engaged in an act or practice that constitutes an unfair method of competition or a deceptive trade practice in the conduct of any trade or commerce"; (2) that the defendant's "conduct affected the public interest"; (3) that the plaintiff "was injured in its business or property by [the defendant's] unfair method of competition or deceptive trade practice"; and (4) that plaintiff suffered damages. *Oriental Trading Co., Inc. v. Yagoozon, Inc*., No. 8:13CV351, 2016 WL 2859603, at \*5 (D. Neb. May 16, 2016) (internal citation omitted); *see also* Neb. Rev. Stat. § 59-1602.

Plaintiff provides no explanation or support for her claim under the Nebraska Consumer Protection Act.  Plaintiff alleges only conclusory allegations that Defendants engaged in "unfair methods of competition or deceptive acts or practices" in violation of federal and state consumer protection statutes, without any factual support or explanation of the specific statutory provisions Defendants purportedly violated.  *See* SAC ¶¶ 87– 103.  For example, Plaintiff claims that Defendants made "deceptive, unconscionable, or fraudulent representations, and material omissions to patients, physicians, and consumers" without any description of the representations allegedly made, why they were deceptive, unconscionable, or fraudulent, or to whom they were made and when.  *Id.* ¶¶ 94, 98.  Plaintiff's threadbare allegations fail to establish any consumer fraud claims and should be dismissed.

Plaintiff also asserts claims under the Magnuson-Moss Warranty Act, which "affords consumers a private cause of action for violations of the substantive provisions of the Act and for

breach of a written or implied warranty." *Sanford v. Ektelon/Prince Sports Grp., Inc.*, No. 8:97CV368, 1999 WL 33537914, at *5 (D. Neb. Nov. 5, 1999); *see also* 15 U.S.C. § 2301 et seq. However, federal courts have recognized that personal injury claims "are not cognizable under Magnuson-Moss" and that "Congress intended to let personal injury cases remain the products of state law, unless a substantive provision of the Magnuson-Moss Act was violated." *Sanford* at *7 (citing *Boelens v. Redman Homes, Inc.,* 748 F.2d 1058, 1065 (5th Cir. 1984) and *Gorman v. Saf–T–Mate, Inc.*, 513 F. Supp. 1028, 1033–35 (N.D. Ind. 1981)). Like her consumer fraud claims under Nebraska law, Plaintiff provides no explanation or support for a violation of the Magnuson-Moss Warranty Act.

**VII.    Plaintiff Fails to State a Claim for Vicarious Liability**

Vicarious liability is a derivative form of liability for an underlying tortious act. *See Dickey v. Meier's Estate*, 197 N.W.2d 385, 387 (Neb. 1972). For the reasons stated above, Plaintiff fails to allege any tortious act committed by Defendants or their "officers, agents, servants, employees, and representatives." SAC ¶ 174. Because Plaintiff's vicarious liability claim is dependent on the validity of her other claims, all of which fail, and cannot be maintained independently, this claim also should be dismissed.

**VIII.   Plaintiff Fails to State a Claim for Unjust Enrichment**

Under Nebraska law, the equitable doctrine of unjust enrichment is available "[w]hen the inequitable and unconscionable retention of a benefit occurs" requiring the recipient "to pay for the reasonable value of the benefit received." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 755 (8th Cir. 2006) (citing *Bush v. Kramer*, 173 N.W.2d 367, 369 (Neb. 1969)). "The law of restitution and unjust enrichment deals with situations in which one person is accountable to another on the ground that otherwise he would unjustly suffer loss." *Wolfson Car Leasing Co. v. Weberg*, 264 N.W.2d 178, 183 (Neb. 1978). Plaintiff fails to allege any unjust loss she has

16

suffered relating to her claims, nor has she alleged that Defendants have inequitably retained any benefit derived from Plaintiff's use of the PCO mesh in repairing her ventral hernia.  Plaintiff's claim hinges on her allegation that "Plaintiff did not in fact receive a safe and effective medical device"—a claim which she has failed to substantiate with any facts.  SAC ¶ 110.  As Plaintiff has not established that Defendant was unjustly enriched by her use of PCO mesh, the Court should dismiss her unjust enrichment claim.

## IX.    Plaintiff Cannot Maintain Her Punitive Damages Claim.

Under Nebraska law, "punitive, vindictive, or exemplary damages contravene Neb. Const. art. VII, § 5, and thus are not allowed in this jurisdiction."  *O'Brien v. Cessna Aircraft Co.*, 903 N.W.2d 432, 458 (Neb. 2017) (citing *Distinctive Printing & Packaging Co. v. Cox*, 443 N.W.2d 566, 574 (Neb. 1989)).  As punitive damages are unconstitutional under Nebraska law, Plaintiff's request for punitive damages must be dismissed.

## <u>CONCLUSION</u>

Because Plaintiff has not alleged sufficient facts to support the elements of her strict liability, negligence and negligence per se, misrepresentation, consumer protection, unjust enrichment, and punitive damages claims despite three attempts to amend her complaint to address clear deficiencies, Plaintiff's SAC should be dismissed in its entirety and with prejudice.

Dated: May 11, 2020                          Respectfully Submitted,

                                             **DLA PIPER LLP (US)**

                                             */s/ Jessica C. Wilson*
                                             Jessica C. Wilson
                                             DLA PIPER LLP (US)
                                             33 Arch Street, 26th Floor
                                             Boston, MA 02110-1447

Telephone: (617) 406-6000
Facsimile: (617) 406-6100
jessica.wilson@dlapiper.com

*Attorney for Defendants*
*Covidien US Holdings, Inc., Covidien LP,*
*and Medtronic, Inc.*