## United States District Court
## District of Massachusetts

```
_____
                              )
Quanita Monroe,               )
                              )
          Plaintiff,          )
                              )
     v.                       )    Civil Action No.
                              )    20-10144-NMG
Medtronic, Inc. et al.,       )
                              )
          Defendants.         )
_____ )
```

### MEMORANDUM & ORDER

**GORTON, J.**

Plaintiff Quanita Monroe ("plaintiff" or "Monroe") alleges that Medtronic, Inc. ("Medtronic"), its subsidiaries Covidien LP and Covidien U.S. Holdings, Inc. (collectively, "Covidien") and numerous unknown individuals involved in the manufacturing and distribution process (collectively, with Medtronic and Covidien, "defendants") are liable for her severe internal injuries caused by a medical mesh product implanted during hernia repair surgery. Pending before the Court is defendants' motion to dismiss plaintiff's complaint.

I.   **Factual Background**

Medtronic is a medical device manufacturer based in Ireland
with a United States principal place of business in Minnesota.
In 2015, Medtronic acquired each of the medical device companies
that comprise Covidien, both of which are incorporated in
Delaware and have their principal places of business in
Massachusetts.

Covidien manufactures several different kinds of hernia
mesh, including a polyester surgical mesh known as Parietex
Composite ("PCO") mesh.  PCO mesh is a two-sided composite mesh
which, like other such meshes, is used to add support to
muscular walls and prevent the recurrence of hernias.  It has a
protective absorbable collagen barrier to prevent tissue
attachment on one side and a polyester textile on the other
side.

Defendants allegedly secured approval to market PCO mesh
from the U.S. Food and Drug Administration ("FDA") pursuant to a
section of the Food, Drug and Cosmetic Act ("FDCA") that applies
to devices found to be "substantially equivalent" in design and
function to a device already legally on the market. 21 U.S.C. §
360c(f) and (i).  That process, plaintiff avers, allowed

-2-

defendants to forego pre-market clinical studies and research intended to ensure the safety of the product.

Monroe, a resident of Nebraska, alleges that she underwent surgery to repair an inguinal hernia in May, 2013, during which PCO mesh manufactured by defendants was implanted.  She alleges that she suffered from chronic abdominal pain in the months following the surgery and that she underwent corrective surgery on an unrecalled date to remove or revise part of the implanted mesh.

In January, 2017, Monroe claims she went to the emergency room complaining of severe abdominal pain.  Exploratory surgery purportedly revealed that the PCO mesh had eroded into her small intestine, requiring the immediate removal of the mesh and a portion of her bowel.

Plaintiff contends that, as a result of defendants' negligent conduct in the manufacturing and distribution of PCO mesh, she has suffered severe and permanent injuries.

## II.  Procedural Background

Plaintiff filed her original complaint in this Court on January 23, 2020, alleging jurisdiction based upon diversity of citizenship.  She amended her complaint first in February, 2020, and then again in April, 2020.  In her second amended complaint

("the complaint"), plaintiff alleges 11 counts against the
defendants: negligence (Count I); strict liability for defective
design (Count II); strict liability for defective manufacturing
(Count III); strict liability for failure to warn (Count IV);
violations of 15 U.S.C. § 2301 et seq. and Neb. Rev. Stat. § 59-
1602 et seq. (Count V); unjust enrichment (Count VI); fraudulent
concealment (Count VII); negligent misrepresentation (Count
VIII); negligence per se in violation of 21 U.S.C. § 331(e) and
21 C.F.R. § 806.01(a)(1) (Count IX); vicarious liability (Count
X); and punitive damages (Count XI).

Defendants filed their motion to dismiss plaintiff's
complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b) on May
11, 2020.  Pursuant to a joint motion of the parties, the case
was stayed in June, 2020, pending a decision of the Judicial
Panel on Multidistrict Litigation ("JPML") as to whether to
consolidate the case with 11 other pending federal actions
related to Covidien's hernia mesh products.  In August, 2020,
the JPML declined to consolidate the cases for coordinated
pretrial treatment and defendants subsequently moved to lift the
stay and renew their motion to dismiss.  This Court lifted the
stay in September, 2020, and plaintiff thereafter timely opposed
the motion to dismiss.

### III. **Motion to Dismiss**

###   A.   **Legal Standard**

To survive a motion to dismiss, a claim must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  In considering the merits of a motion to dismiss, the Court may only look to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference and matters of which judicial notice can be taken. Nollet v. Justices of Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000), aff'd, 228 F.3d 1127 (1st Cir. 2000).

Furthermore, the Court must accept all factual allegations in the claim as true and draw all reasonable inferences in the claimant's favor. Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000).  If the facts in the claim are sufficient to state a cause of action, a motion to dismiss must be denied. See Nollet, 83 F. Supp. 2d at 208.

Although a court must accept as true all the factual allegations in a claim, that doctrine is not applicable to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662 (2009).  Threadbare recitals of legal elements which are supported by mere

conclusory statements do not suffice to state a cause of action. Id.

**B.   Application**

  **1.   Choice of Law**

As a preliminary matter, this Court must determine what law applies to plaintiff's claims.  In diversity actions, a federal court must apply the law that would be applied under the choice of law rules of the forum state. Levin v. Dalva Bros., 459 F.3d 68, 73 (1st Cir. 2006).  In Massachusetts, courts apply a "functional approach" to choice of law that is "explicitly guided by the Restatement (Second) of Conflict of Laws (1971)." Id. at 74.  Under that approach, tort claims are governed by the law of the state where the injury occurred unless another state has a more significant relationship to the underlying cause of action. Watkins v. Omni Life Sci., Inc., 692 F. Supp. 2d 170, 174 (D. Mass. 2010).

The parties conclude that Nebraska law should apply to plaintiff's claim and this Court agrees.  The implantation of the mesh and the subsequent injuries and treatment appear to have occurred in Nebraska, where plaintiff also resides.  The only state with any other significant connection to the case is Massachusetts, where Covidien has its principal place of

business, but the cause of action is clearly more closely related to Nebraska than Massachusetts.  Although choice of law analysis may be premature at the motion-to-dismiss stage in some circumstances, here the parties are in agreement and the facts are sufficiently clear that delay in making such a determination "would serve no useful purpose." Foisie v. Worcester Polytechnic Inst., 967 F.3d 27, 42 (1st Cir. 2020).  Therefore, this Court will apply Nebraska law.

### 2. Strict Liability (Counts II, III and IV)

#### a. Design Defect

To state a claim of strict liability for a design defect under Nebraska law, a plaintiff must show that

> (1) the defendant placed the product on the market for use and knew, or in the exercise of reasonable care should have known, that the product would be used without inspection for defects; (2) the product was in a defective condition when it was placed on the market and left the defendant's possession; (3) the defect is the proximate or a proximately contributing cause of the plaintiff's injury sustained while the product was being used in a way and for the general purpose for which it was designed and intended; (4) the defect, if existent, rendered the product unreasonably dangerous and unsafe for its intended use; and (5) the plaintiff's damages were a direct and proximate result of the alleged defect.

Vallejo v. Amgen, Inc., 2014 U.S. Dist. LEXIS 138455, at *18 (D. Neb. 2014).  To satisfy the fourth element, a plaintiff must allege facts showing that the product was

dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.

Id. at *18-19 (quoting Freeman v. Hoffman-La Roche, Inc., 260 Neb. 552, 569 (2000)).

Defendants contend that they are entitled to dismissal of Monroe's design defect claim because 1) her allegations that the PCO mesh was unreasonably dangerous or defectively designed are conclusory and 2) she does not explain how an alleged defect in the PCO mesh caused her injuries.

Liberally construing Monroe's complaint, this Court concludes that she has proffered facts sufficient to state a strict liability design defect claim.  Monroe satisfies the first element because she alleged that defendants placed the PCO mesh on the market and knew that it would be used without inspection.  She also satisfies the second element by alleging that the PCO mesh was defective when placed on the market because the absorbable collagen barrier and unsealed edges fail to protect against damage caused by the mesh's polyester textile component.

With respect to the fourth element, Monroe alleged that the defects of PCO mesh rendered it unreasonably dangerous and that the PCO mesh products are "considerably more harmful and

-8-

inadequate than other meshes or methods for hernia repair." To support such a claim, plaintiff alleges that the PCO mesh causes a severe inflammatory response even when properly implanted. She further avers that the mesh, implanted in her according to defendants' instructions, eroded into her small intestine and required surgical removal of part of her bowel. Those factual allegations, accepted as true, permit a reasonable inference that the risk of injury caused by the PCO mesh was greater than an ordinary consumer would expect.

Finally, Monroe meets the third and fifth elements because she asserts that the implantation of defendants' PCO mesh directly and proximately caused her abdominal pain and the erosion of a portion of her small intestine. Citing several recent cases in which courts have dismissed complaints raising similar claims, defendants insist that plaintiff is required to demonstrate precisely how the alleged defect caused her injuries. Yet plaintiff's burden on a motion to dismiss does not require her to prove such a connection conclusively. See, e.g., Dye v. Covidien LP, 2020 U.S. Dist. LEXIS 105676, at *12 (S.D. Fla. 2020) ("It would be unreasonable for the Court to require Plaintiff to plead exactly how the implanted Product is defective and how it caused his alleged injuries when Plaintiff has not yet been afforded discovery or the benefit of expert

testimony."). Rather, it is sufficient that Monroe has alleged that the PCO mesh was defective and proffered facts to support a reasonable inference that the defect caused her injuries.

Accordingly, Monroe has stated a plausible theory of recovery based on a design defect.

### b. Manufacturing Defect

Defendants move to dismiss Monroe's manufacturing defect claim on the ground that she fails to allege properly the elements of such a claim.

Manufacturing defects are related to but differ significantly from design defects. A design defect exists when "the product meets the specifications of the manufacturer but [it] nonetheless poses an unreasonable risk of danger." Jay v. Moog Auto., Inc., 264 Neb. 875, 880 (2002). In contrast, a manufacturing defect exists when "the product differs from the plan and specifications of the manufacturer." Freeman, 260 Neb. at 569 (citing Rahmig v. Mosley Machinery Co., 226 Neb. 423, 438 (1987)).

Monroe pleads no facts indicating that the PCO mesh used to repair her hernia differed in any way from defendants' plan or specifications for that product. Instead, plaintiff repeats her allegations that defendants' PCO mesh products are defective in

their design.  To the extent that plaintiff's allegations can be construed as complaining of a manufacturing defect, they are entirely conclusory and therefore do not suffice to state a cause of action.  Because plaintiff has not demonstrated that the PCO mesh deviated from its intended specifications, she has failed to plead a manufacturing defect claim.

### c. Failure to Warn

Under Nebraska law,

> [a] manufacturer or other seller is subject to liability for failing either to warn or adequately to warn about a risk or hazard inherent in the way a product is designed that is related to the intended uses as well as the reasonably foreseeable uses that may be made of the products it sells.

Vallejo, 2014 U.S. Dist. LEXIS 138455, at *5-6.  Nebraska courts have applied the learned intermediary doctrine in products liability actions involving the warnings for pharmaceutical products.  Id. at *6.  Under that doctrine, a defendant's duty to warn is discharged if adequate warnings were provided to the plaintiff's healthcare provider rather than to the plaintiff herself.  Id.  The adequacy of specific warnings in the context of pharmaceutical products is assessed under a "reasonableness" standard.  Id. at 7.  Further, the deficient warnings must be the cause of the plaintiff's injuries, meaning that the plaintiff must demonstrate that "the treating physician would not have

-11-

prescribed the medical device" if a different warning had been
provided. Langner v. Boston Sci. Corp., 2020 U.S. Dist. LEXIS
222125, at *11 (D. Neb. 2020).

The parties agree that the learned intermediary doctrine
applies to plaintiff's failure to warn claim.  Plaintiff submits
that the Instructions for Use ("IFU") did not contain adequate
warnings with respect to the defects and dangers of the PCO
mesh.  Defendants respond, however, that plaintiff has failed to
allege sufficiently 1) that the warnings in the IFU provided to
plaintiff's physicians were inadequate or 2) how any purported
defect in the warnings caused her injuries.

Defendants' arguments are unavailing.  First, Monroe
identifies numerous alleged deficiencies with respect to the
warnings in the IFU provided to her physicians.  Although many
of the purported deficiencies relate to unexperienced
complications, plaintiff also alleges that 1) the IFU failed to
warn of risks such as "erosion and migration through adjacent
tissue and viscera," the primary complication of which she
complains, and 2) the IFU lacked warnings as to the frequency,
severity and duration of complications.

Second, Monroe sufficiently alleges that the defective
warnings caused her injuries by contending that her physician

would not have used defendants' product if proper warnings had
existed.  She maintains that her physician was induced to use
the PCO mesh based on defendants' representations in the IFU and
that her physician would not have implanted the mesh if proper
warnings had been provided.

Accordingly, Monroe has stated a claim for strict liability
based on a failure to warn.

### 3.   Negligence (Count I)

To state a claim for negligence in a products liability
case under Nebraska law, a plaintiff must plead the elements of
duty, breach, causation and damages. <u>Jay</u>, 264 Neb. at 880.  The
primary inquiry is "whether the manufacturer's conduct was
reasonable in view of the foreseeable risk of injury." <u>Id.</u> at
880.  Here, defendants contend that Monroe has not plead
adequately the elements of breach or causation.

Plaintiff alleges that defendants were negligent in

designing, testing, inspecting, manufacturing, packaging,
labeling, marketing, distributing, and preparing written
instructions and warnings [for PCO mesh products].

Because Monroe has plausibly stated a claim for strict liability
based on a design defect and a failure to warn, this Court
concludes that she has also alleged a claim for negligence. See
<u>Dye</u>, 2020 U.S. Dist. LEXIS 105676, at *25-27 (holding that

plaintiff stated a claim for negligent manufacturing where he also plausibly stated a claim for strict liability design defect and manufacturing defect).  Insofar as her negligence claim is based on a manufacturing defect that differs from the product's intended design, however, such a claim cannot succeed for the same reason that her strict liability manufacturing defect claim fails.

### 4.   Consumer Protection Violations (Count V)

Monroe alleges that defendants engaged in unfair and deceptive conduct in violation of two consumer protection laws: the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 et seq., and the Nebraska Consumer Protection Act ("NCPA"), Neb. Rev. Stat. § 59-1602 et seq.  Defendants urge this Court to dismiss both claims as inadequately pled.

The MMWA

affords consumers a private cause of action for violations of the substantive provisions of the Act and for breach of a written or implied warranty.

Sanford v. Ektelon/Prince Sports Group, Inc., 1999 U.S. Dist. LEXIS 17458, at *15 (D. Neb. 1999).  The MMWA does not create a federal cause of action for personal injury claims based on breach of warranty.  As a result, plaintiffs must demonstrate a specific substantive violation of the MMWA to support a claim

for personal injuries. Id. at *20-22; Boelens v. Redman Homes, Inc., 748 F.2d 1058, 1065-66 (5th Cir. 1984).

Monroe's MMWA claim is similar to the one discussed in Sanford, where the court found that the plaintiff failed to state a claim under the substantive provisions.  Indeed, her allegations "are of a generic nature" and "[n]o violations of [the substantive provisions] are specifically alleged." Sanford, 1999 U.S. Dist. LEXIS 17458, at *23.  Monroe similarly does not allege that defendants attempted to disclaim any warranties, which could indicate a substantive violation.  For those reasons, Monroe has not stated a claim for a violation of the MMWA.

Under the NCPA,

[u]nfair methods of competition and unfair or deceptive
acts or practices in the conduct of any trade or commerce
shall be unlawful.

§ 59-1602.  To state a claim of a violation of the NCPA, a plaintiff must allege that the defendant

(1) engaged in an act or practice that constitutes an
unfair method of competition or a deceptive trade practice
in the conduct of any trade or commerce; (2) that the
defendant's conduct affected the public interest; (3) that
the plaintiff was injured in its business or property by
[the defendant's] unfair method of competition or deceptive
trade practice; and (4) that plaintiff suffered damages.

-15-

Oriental Trading Co., Inc. v. Yagoozon, Inc., 2016 WL 2859603, at *5 (D. Neb. 2016) (internal quotation marks omitted). Pursuant to the public interest requirement, the unfair or deceptive practice complained of must "directly or indirectly affect[] the people of the State of Nebraska." Anderson v. Travelex Ins. Servs., 2019 U.S. Dist. LEXIS 73407, at *9 (D. Neb. 2019); § 59-1601(2).

Monroe has stated a claim under the NCPA, albeit just barely. Liberally construing plaintiff's complaint, she alleges that defendants engaged in unfair and deceptive conduct by creating a product that is purportedly dangerous in its design and use of polyester and failing to warn about the risks inherent in the PCO mesh, including its alleged propensity to cause inflammation and erosion into surrounding tissue. She further alleges that those unfair practices led her physicians to use the PCO mesh to repair her hernia and that the implanted mesh eroded into her small intestine, causing her damage.

Finally, plaintiff alleged facts sufficient to establish that defendants' deceptive practices had an impact on the public interest. Her allegations raise a reasonable inference that the defects in the PCO mesh and accompanying IFU were not limited to the individual product used in her surgery but rather in all PCO

-16-

mesh products distributed across the country, including in Nebraska.

Accordingly, defendants are not entitled to dismissal of Monroe's claim under the NCPA.

### 5.  Unjust Enrichment (Count VI)

Defendants move to dismiss Count VI on the ground that Monroe has not established that they were unjustly enriched by her use of the PCO mesh.

Unjust enrichment occurs when "there has been a transfer of a benefit without adequate legal ground." Kalkowski v. Neb. Nat'l Trails Museum Found. Inc., 290 Neb. 798, 806 (2015).  To state an unjust enrichment claim, a plaintiff must plead that "[he or she] bestowed a benefit on the defendants and that it would be unjust to allow the defendants to retain that benefit." Abrahamson v. First Nat'l Bank of Holdrege, 2006 U.S. Dist. LEXIS 20045, at *20 (D. Neb. 2006).

Plaintiff alleges that 1) she paid for defendants' PCO mesh to repair her hernia and that defendants accepted payment from plaintiff and others on her behalf, 2) she did not receive the safe and effective medical device for which she paid and 3) defendants' PCO mesh eroded into her bowel and required surgery to remove.  Monroe's allegations are therefore sufficient to

-17-

raise a reasonable inference that it would be inequitable for defendants to retain the benefit they received in the form of payment for the PCO mesh used in her hernia repair operation. Accordingly, plaintiff has stated a claim for unjust enrichment.

### 6.   Fraudulent Concealment and Negligent Misrepresentation (Counts VII and VIII)

Defendants move to dismiss Counts VII and VIII for failure to meet the heightened pleading requirements of Fed. R. Civ. P. 9(b).

To make a prima facie case for negligent misrepresentation under Nebraska law, a plaintiff must demonstrate that

> (1) a representation was made; (2) the representation was false; (3) the representation was made recklessly or negligently as to its truth; (4) the representation was made with the intention that it should be relied upon; (5) the representation was relied upon; and (6) damages were suffered as a consequence.

Olsen v. Nelnet, Inc., 392 F. Supp. 3d 1006, 1019 (D. Neb. 2019).  Similarly, to state a claim for fraudulent concealment under Nebraska law, a plaintiff must show that

> (1) the defendant had a duty to disclose a material fact; (2) the defendant, with knowledge of the material fact, concealed the fact; (3) the material fact was not within the plaintiff's reasonably diligent attention, observation, and judgment; (4) the defendant concealed the fact with the intention that the plaintiff act in response to the concealment or suppression; (5) the plaintiff, reasonably relying on the fact or facts as the plaintiff believed them

-18-

to be as the result of the concealment, acted or withheld action; and (6) the plaintiff was damaged by the plaintiff's action or inaction in response to the concealment.

Knights of Columbus Council 3152 v. KFS Bd, Inc., 280 Neb. 904, 925-26 (2010).  Under the Federal Rules, a party alleging fraud must state with particularity the circumstances constituting fraud. Fed. R. Civ. P. 9(b).  To satisfy that requirement, a complaint "must plead the who, what, where, when, and how of the alleged fraud" and conclusory allegations of fraudulent or deceptive conduct are insufficient. Gray v. Wiese, 2016 U.S. Dist. LEXIS 113870, at *8-9 (D. Neb. 2016) (internal quotations omitted).  Because negligent representation is "a subspecies of fraud," the particularity rule applies to both negligent misrepresentation and fraudulent concealment claims. Superior Servs. v. Universal Warranty Corp., 2016 U.S. Dist. LEXIS 66756, at *16-18 (D. Neb. 2016).

Monroe fails to state a claim for either fraudulent concealment or negligent misrepresentation under the heightened pleading requirements of Fed. R. Civ. P. 9(b).  She makes only vague allegations that defendants concealed or misrepresented the "serious side effects" of the PCO mesh and that it "had not been adequately tested."  She also makes no attempt to specify the timeframe and manner in which the misrepresentations were

-19-

made, alleging that defendants concealed "the true defective nature" of the PCO mesh "[a]t all relevant times." Such vague recitation of the elements of each claim is insufficient "to allow a party to quickly and specifically respond to a potentially damaging allegation" as required by Rule 9(b). Olsen, 392 F. Supp. 3d at 1020. Accordingly, Monroe has failed to state a claim of either fraudulent concealment or negligent misrepresentation.

### 7.   Negligence Per Se (Count IX)

Monroe contends that defendants are negligent per se for "failure to establish or maintain certain records, or make certain reports, with respect to medical devices" in violation of 21 U.S.C. § 331(e) and for "[f]ailure to report in writing to FDA a correction, removal, and/or discontinuation of a device conducted to reduce a risk to health posed by the device" in violation of 21 C.F.R. § 806.01(a)(1).

The Nebraska Supreme Court has repeatedly held that

> the violation of a regulation or statute is not negligence per se, but may be evidence of negligence to be considered with all the other evidence in the case.

Certain Underwriters at Lloyd's v. Southern Pride Trucking, Inc., 301 F. Supp. 3d 949, 959 (D. Neb. 2018) (quoting Scheele v. Rains, 292 Neb. 974, 982 (2016)). Accordingly, although

-20-

defendants' alleged violations may be evidence of negligence, they cannot constitute negligence per se and thus Monroe's claim is not viable.

Even if the violation of a statute or regulation did constitute negligence per se under Nebraska law, plaintiff's allegations are wholly conclusory and unsupported by sufficient facts.  Therefore, Monroe's negligence per se claims will be dismissed.

### 8.  Vicarious Liability (Count X)

Under the doctrine of respondeat superior,

> an employer may be held vicariously liable for the
> negligence or intentional torts of its employee, provided
> the employee was acting within the scope of the employer's
> business.

Pearce v. Werner Enters., Inc., 116 F. Supp. 3d 948, 953 (D. Neb. 2015).

Defendants urge dismissal of Monroe's vicarious liability claim because it rests on the validity of her other claims, all of which must fail according to defendants.  Because this Court has already determined that several of Monroe's claims will survive the motion to dismiss, it will not dismiss her claim for vicarious liability on that basis.

Liberally construing Monroe's complaint, she has stated a claim of vicarious liability.  She avers that any alleged actions or omissions of defendants were committed by their agents or employees within the scope of their employment and with the full authorization or ratification of defendants.  Her factual allegations raise the reasonable inference that the manufacturing, advertising and distribution of the PCO mesh of which Monroe complains was conducted by defendants' agents or employees within the scope of their employment.  Accordingly, defendants are not entitled to dismissal of Monroe's claim for vicarious liability.

### 9.    Punitive Damages (Count XI)

Finally, defendants urge this Court to dismiss plaintiff's claim for punitive damages.  It is well-established that

> Nebraska law does not permit a plaintiff to obtain punitive damages over and above full compensation for the plaintiff's injuries.

Golnick v. Callender, 290 Neb. 395, 404 (2015); see also State ex rel. Cherry v. Burns, 258 Neb. 216, 226 (1999) ("[P]unitive damages contravene Neb. Const. art. 7, § 5, and are not allowed.")

Monroe attempts to preserve her claim for punitive damages by highlighting that the United States Supreme Court has held that punitive damages are recoverable under 42 U.S.C. § 1983

> when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.

Burns, 258 Neb. at 227.  Plaintiff's argument is both perplexing and without merit.  She brings no claim under § 1983 or any other federal civil rights law and thus the cited exception to Nebraska's prohibition on punitive damages does not apply. Accordingly, Monroe can prove no set of facts that would entitle her to punitive damages and her claim in that regard will be dismissed.

## IV.  Leave to Amend Complaint

In her memorandum in opposition to defendants' motion to dismiss, Monroe requests that, if any of her claims are dismissed, she be granted leave to amend her complaint.

Under the Federal Rules of Civil Procedure, leave to amend should be "freely give[n]" in instances in which "justice so requires." Fed. R. Civ. P. 15(a)(2).  A district court may deny such a request, however, when it is characterized by "undue delay, bad faith, futility, [or] the absence of due diligence on the movant's part." Nikitine v. Wilmington Trust Co., 715 F.3d

-23-

388, 390 (1st Cir. 2013).  Plaintiffs have the burden to demonstrate why a court should allow leave to amend. See <u>Newman</u> v. <u>Metro. Life Ins. Co.</u>, 2013 U.S. Dist. LEXIS 32286, at *31 (D. Mass. 2013).

This Court sees no reason to allow plaintiff leave to amend her complaint any further.  She has already amended her complaint twice and has failed to provide a proposed amended complaint or proffer any basis for yet another amendment. <u>See</u> <u>id.</u>(denying leave to amend where plaintiff "failed to provide a proposed amended complaint or articulate the basis for [her] additional claims"); <u>Upshaw</u> v. <u>Andrade</u>, 2011 U.S. Dist. LEXIS 91985, at *5 (D. Mass. 2011) (finding a plaintiff's motions for leave to amend "deficient because they fail to attach a proposed amended complaint"); <u>Noonan</u> v. <u>Wonderland Greyhound Park Realty</u> <u>LLC</u>, 723 F. Supp. 2d 298, 344 n.117 (D. Mass. 2010) (explaining that "in the event [the plaintiff] seeks leave to amend . . . , he must file the proper motion for leave with supporting legal authority, <u>see</u> LR. 7.1, and attach a copy of the proposed amended complaint").

**ORDER**

For the foregoing reasons, the motion of defendants to dismiss plaintiff's complaint (Docket No. 10) is,

(a)  with respect to Counts III, VII, VIII, IX, XI and the claim pursuant to the Magnuson-Moss Warranty Act in Count V, **ALLOWED**, but

(b)  otherwise, **DENIED.**

There will be no further amendments to the complaint.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated January 6, 2021

-25-